The AETNA CASUALTY AND SURETY
COMPANY, Plaintiff,

v.

The HOME INSURANCE COMPANY,
Defendant.

No. 89 Civ. 7043 (BN).

United States District Court,
S.D. New York.

April 4, 1995.

Frank M. Nicoletti, Lowenhal, Landau, Fischer & Bring, P.C., New York City, for Home Ins. Co.

## OPINION AND ORDER

NEWMAN, Senior Judge: [1]

This court rendered a decision in the above-captioned matter following a trial on the merits, and accordingly ordered judgment to be entered in favor of plaintiff The Aetna Casualty and Surety Company ("Aetna"). *See The Aetna Casualty and Surety Company v. The Home Insurance Company,* 882 F.Supp. 1328 (S.D.N.Y.1995). Immediately upon the filing of said decision, defendant The Home Insurance Company ("Home") informed the court that both parties had arrived at a settlement agreement, and by its terms the parties have moved jointly by three-way telephone conference held March 30, 1995 to vacate the court's decision pursuant to Fed.R.Civ.P. Rule 60(b).[2] Pursuant to the terms of the settlement, the parties' agreement to waive any appeal to the United States Court of Appeals for the Second Circuit is conditioned upon this court's vacating its decision.[3] For the reasons that follow, the court denies the motion.

## DISCUSSION

It should first be noted that vacatur of the judgment (or dismissal) is not compelled in this case on mootness grounds. The parties have stipulated that the case is not moot, since the waiver by Home of the right to appeal is expressly conditioned upon vacatur. Thus, an Article III case and controversy continues to exist in this case unless and until the court grants the instant motion.[4]

1. Bernard Newman, Senior Judge of the United States Court of International Trade, sitting as United States District Judge by designation. This matter was reassigned to the writer via regular channels from the Honorable John F. Keenan, U.S.D.J.

2. Furthermore, Home has briefed the issue extensively by letters to the court dated March 29, 1995 and March 31, 1995 respectively. (Letters of Benjamin N. Gonson, Esq.)

3. Moreover, Home advises the court, that under the settlement agreement, the parties undertake to use good faith efforts to keep the opinion of the court confidential.

4. Even if the case were mooted by the parties' settlement, this court would decline to order vacatur, since the mootness would not arise by "happenstance", *United States v. Munsingwear Inc.,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950), but by settlement, which is

A motion seeking relief pursuant to Rule 60(b) is addressed to the sound discretion of the district court. *Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir.1986). In resolving such an application, the court must balance the ends of justice on the one hand, e.g. by honoring a settlement, and the public interest in the finality of judgments on the other. *See id.*

In *Nestle Co. v. Chester's Market, Inc.*, 756 F.2d 280 (2d Cir.1985), the Second Circuit reversed the district court's denial of a motion to vacate its own judgment under Rule 60(b) as an abuse of discretion, holding that the interest in finality of judgments was outweighed by the importance of honoring settlements. *Id.* at 283. The *Nestle* court opined, that although future litigants might face a burden without the benefit of the district court's rulings on trademark litigation, said burden was outweighed by the real burden on the litigants in *Nestle* of having to bear the risks and costs of continued litigation. *Id.* at 284.

However, in *Manufacturers Hanover Trust Co. v. Yanakas*, 11 F.3d 381 (2d Cir. 1993), the Second Circuit declined a motion to vacate its own decision, which motion was raised after promulgation of the opinion but before issuance of the mandate. It is noteworthy that the court in *Manufacturers Hanover* was not concerned with a Rule 60(b) motion; rather, the court was confronted with the question of whether vacatur of an appellate precedent was prudentially sound. 11 F.3d at 384. The Second Circuit was confronted with the reality that the party was seeking to bury forever the precedential effect of the court's opinion. Disapproving such a use of the court's vacatur power, the court stated, "it would allow a party with a deep pocket to eliminate an unreviewable precedent it dislikes simply by agreeing to a sufficiently lucrative settlement to obtain its adversary's cooperation in a motion to vacate. We do not consider this a proper use of the judicial system." *Id.* (citing *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, —— U.S. ——, ——, 114 S.Ct. 425, 431, 126 L.Ed.2d 396 (1993) (Stevens, J., dissenting from dismissal of certiorari as improvidently granted)).[5]

Although the court in *Manufacturers Hanover* did not overrule *Nestle*, the court framed its decision in response to the danger of allowing litigants to bargain over the existence of judicial precedent. In this court's view, the same considerations are relevant at the district court level. The *Manufacturers Hanover* court recognized that other circuits decline to vacate even a district court decision (in direct opposition to the rule in *Nestle*) based upon the parties' settlement, and expressed agreement with the Seventh Circuit's warning:

> [w]hen a clash between genuine adversaries produces a precedent, ... the judicial system ought not to allow the social value of that precedent, created at a cost to the public and other litigants, to be a bargaining chip in the process of settlement. The precedent, a public act of a public official, is not the parties' property.

11 F.3d at 385 (quoting *In re Memorial Hospital of Iowa County, Inc.*, 862 F.2d 1299, 1302 (7th Cir.1988)). *See also In re Smith*, 964 F.2d 636, 638 (7th Cir.1992) (Posner, J.) ("[w]e vacate unappealable decisions, to prevent them from having a preclusive effect. We do not vacate opinions, to prevent them from having a precedential effect."); *Oklahoma Radio Associates v. F.D.I.C.*, 3 F.3d 1436, 1444 (10th Cir.1993) (permitting parties to use settlement to withdraw unfavorable precedents "fraught with the potential for abuse").[6]

---

hardly unattributable to any act of the parties and would not, therefore, require vacatur. *See* the recent decision of the Supreme Court authored by Justice Scalia in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, —— U.S. ——, ——, 115 S.Ct. 386, 392, 130 L.Ed.2d 233 (1994); *Associated General Contractors of Connecticut, Inc. v. City of New Haven*, 41 F.3d 62, 67 (2d Cir.1994).

**5.** The court in *Manufacturers Hanover* distinguished *Nestle* on the ground that the parties sought vacatur of an appellate decision rather than a district court decision, which would be reviewable as a matter of right. Nevertheless, it would seem that even that distinction is now suspect in light of *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, —— U.S. ——, ——, 115 S.Ct. 386, 393, 130 L.Ed.2d 233 (1994).

It is also worth mentioning that *Nestle*, while discussing the denial of a motion to dismiss pursuant to Rule 60(b), formed its rule favoring vacatur by analogizing to the policies underlying the equitable remedy of vacatur due to the intervening mootness of cases during the pendency of appeals. 756 F.2d at 282 (citing *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950)). However, in *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership,* —— U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), the Supreme Court found *Munsingwear* inapplicable in cases where the losing party has entered into a settlement whereby he forfeits the right to appeal. —— U.S. at ——, 115 S.Ct. at 392. Thus, citing *Karcher v. May,* 484 U.S. 72, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987) the Supreme Court held that mootness arising due to a settlement did not justify vacatur pursuant to an appellate court's equitable power where the controversy became moot due to circumstances attributable to the losing party. *U.S. Bancorp,* —— U.S. ——, 115 S.Ct. at 392.

The effect of *U.S. Bancorp* in mootness cases has already been addressed in *Associated General Contractors of Connecticut, Inc. v. City of New Haven,* 41 F.3d 62, 67 (2d Cir.1994), *supra* note 4. It has yet to be determined whether the Supreme Court's frowning upon the routine use of vacatur in *U.S. Bancorp* would lead to refinement of *Nestle* in cases where a district court declined to vacate its own decision under Rule 60(b), although the holding in *Manufacturers Hanover* suggests *strongly* that this circuit is moving away from routine vacatur. It is, at least, clear from *Manufacturers Hanover* that vacatur should not be granted as a matter of course, and should proceed from a careful consideration of the public interest, either by the appellate court in the exercise of its own equitable power, or by the district

court within the context of the Rule 60(b) motion.[7]

■ The instant motion, of course, was interposed before even the filing of an appeal, and seeks vacatur in conformance with Rule 60(b). As already observed, in reaching the merits of the motion, the court must weigh the settlement interests of the parties against the public interest in finality of judgments, including any precedential or preclusive effect. Accordingly, the parties liken the instant case to *IBM Credit Corp. v. United Home for Aged Hebrews,* 848 F.Supp. 495 (S.D.N.Y.1994), in which the court balanced the settlement interests of the parties against the interests of nonparties in the collateral estoppel effect of a decision as well as the development of decisional law through the publication of district court opinions. There, the court reasoned, that because a district court decision was not binding in any event but merely persuasive authority, and since no collateral estoppel interests of nonparties were known to the court, the balance of interests favored the private settlement interests of the litigants. Accordingly, there vacatur was ordered. 848 F.Supp. at 496–97.

This court considers, however, that the important public interest in the development of decisional law definitively outweighs the settlement interests of the parties here, and compels a different result. Controversial issues concerning the applicability of the "follow the fortunes/settlements" doctrine were directly addressed by the court's decision. Among other issues, this court passed upon the question of whether the loss settlements doctrine applies in the area of facultative reinsurance, and whether such doctrine is enforceable in the absence of explicit loss settlement clauses in the contract of reinsurance. Both questions in particular were the subject of disagreement among commentators and the expert witnesses at trial, and

---

6. The same arguments were carefully considered in *J.A. Brundage Plumbing and Roto–Rooter, Inc. v. Massachusetts Bay Insurance Company,* 153 F.R.D. 36 (W.D.N.Y.1994). There, the magistrate judge, with reservations, ordered vacatur but called for reconsideration of the *Nestle* rule. *See id.* at 38.

7. For scholarly treatment of the issue, the reader is referred to Jill E. Fisch, *Rewriting History: The Propriety of Eradicating Prior Decisional Law Through Settlement and Vacatur,* 76 Cornell L.Rev. 589 (1991) (cited in *U.S. Bancorp,* —— U.S. at ——, 115 S.Ct. at 393) and Elizabeth R.P. Bowen, *Routine Vacatur: The Supreme Court Strikes the Balance in Favor of Finality,* 3 Federal Circuit Bar Journal 259 (1993).

had only received scant attention in published and unpublished decisions. By this settlement, those issues would be returned to their previous, unresolved state. As the court in *IBM Credit Corp.* recognized, even though a district court decision does not bind other courts even in the same district, it may be at least persuasive authority in guiding other courts concerning issues of law capable of repetition in future cases. *See id.*[8]

Moreover, even if this case were reversed on appeal, it would serve the salutary function of leading to an appellate decision that would, unlike this court's decision, supply binding precedential effect.

Further, although Home urges that vacatur would conserve judicial resources by avoiding further litigation on appeal, that argument ignores the considerable judicial resources that have already been expended in litigating the issues in this case, which resources would be expended for nought if vacatur were ordered.[9] The trial of this matter itself lasted twelve days, involved a great many exhibits and a judgment approximating $7 million, and was preceded by motions *in limine* and for summary judgment leading to the writing of two judicial opinions by Judge Keenan, in addition to the decision above cited.[10]

## CONCLUSION

The court emphasizes that by conditioning the waiver of an appeal upon the vacatur of the decision in this matter, the parties have placed in issue the integrity of the judicial process. Considering the countervailing interests involved, the court finds that the balance disfavors vacatur. If Home wishes to avoid the adverse effects of an unfavorable decision, the better method to employ here is judicial review by the Second Circuit.

8. Although the court is not disposed to speculate, it cannot dismiss the possibility of an interest on the part of third parties in any collateral estoppel effect of the court's decision. Indeed, Home seeks to justify vacatur, in part, by highlighting the possibility that "the highly fact-specific interpretation of the parties' standard form insurance contracts will be used as precedent in an out-of-context and misplaced manner", thereby raising the possibility that the finality of this court's judgment may be more important to nonparties than the parties allow.

The joint motion of the parties to vacate this court's decision pursuant to Fed.R.Civ.P. Rule 60(b) is accordingly DENIED.

IT IS SO ORDERED.

9. Said resources might also have been saved if a settlement had been concluded before or during the trial, as was suggested by this court.

10. In light of the energetic advocacy of the attorneys at trial, the court regards it appropriate at this time to observe that the work performed by counsel was noteworthy for its quality and professionalism.