ARTMATIC USA COSMETICS, a DIVISION OF the ARTHUR MATNEY CO., INC. and Arthur Matney, Plaintiffs,

v.

MAYBELLINE CO., a DIVISION OF SCHERING PLOUGH, INC., Paris Presents, Inc., a division of Allied of Chicago, Inc., Noxell Corporation, Bonne-Bell, Inc., Almay Inc., a wholly owned subsidiary of Revlon Corp., Max Factor, Coty Division of Pfizer Inc., Pavion Ltd., Cosmetics & Chemical Manufacturers, Inc., Cosmair, Inc., Chesebrough Ponds, Inc., Dell Laboratories, Inc., Estee Lauder, Inc., Posner Labs, Inc., and Zalan Products Inc., Defendants.

No. CV–94–1799.

United States District Court, E.D. New York.

Dec. 5, 1995.

Robert D. Katz, Cooper & Dunham L.L.P., New York City, for Plaintiffs Artmatic USA Cosmetics and Arthur Matney.

Susan Robertson, Kirchstein, Ottinger, Israel & Schiffmiller, P.C., New York City, for Dell Laboratories, Inc.

Ronald J. Snyder, Dinsmore & Shohl, Cincinnati, Ohio, for Defendants Noxell Corp. and Max Factor Corp.

Laura Weiss, Fenster & Weiss, New City, New York, for Defendant Pavion Ltd.

Allen Winston, Winston & Winston, Rye, New York, for Defendants Zalan.

### MEMORANDUM AND ORDER

GLASSER, District Judge:

### SUMMARY

This multi-defendant action for patent infringement is before the Court on two motions: (1) a motion by plaintiffs Artmatic USA Cosmetics and Arthur Matney ("Artmatic") to modify the default judgment entered against them on October 18, 1994 by eliminating a declaration of patent invalidity; and (2) a motion by defendant Maybelline Co. ("Maybelline") for summary judgment based on the collateral estoppel effect of the default judgments secured by Max Factor and Noxell. For the reasons below, Artmatic's motion to modify the default judgments is denied and Maybelline's motion for summary judgment is denied.

### FACTS

This is a multi-party patent infringement suit. For purposes of these motions, the relevant facts are as follows.

On April 18, 1994, Artmatic filed a complaint against Max Factor, Noxell, Maybelline, and others alleging patent infringement of a design for a cosmetics compact. A stipulation and order dated June 2, 1994 extended the time for defendants Max Factor and Noxell to answer to July 16, 1994.

On June 22, 1994, Maybelline answered the complaint and counterclaimed for a declaratory judgment that its products were noninfringing and that the patents in suit were invalid. On July 15, 1994, Max Factor and

G.T. Delahunty, Brooks, Haidt, Haffner & Delahunty, New York City, for Defendants Noxell Corp. and Max Factor Corp.

Gregory F. Hauser, Walter, Conston, Alexander & Green, P.C., New York City, for Defendant Maybelline Co.

Noxell answered the complaint and counter-claimed for similar relief.

On September 16, 1994, Max Factor and Noxell filed motions for default judgments based on Artmatic's failure to answer their counterclaims. On October 7, 1994, at oral argument, this court granted Max Factor and Noxell's motions for final judgments on their counterclaims; dismissal of Artmatic's complaint with respect to them with prejudice; and the award of costs and disbursements, including reasonable attorney's fees.

On November 17, 1994, Artmatic filed an appeal from the Max Factor and Noxell default judgments. The appeal was dismissed on December 1, 1994 "for failure to file forms C and D." Mandate of Court of Appeals, DN 94–9184.

On December 2, 1994, Artmatic moved to relieve the law firm of Schrier & Tanen as counsel. On December 6, 1994, the law firm of Cooper & Dunham was substituted as Artmatic's attorney of record.

On March 6, 1995, Maybelline filed a motion for a default judgment based on Artmatic's failure to comply with discovery requests. The Court denied the motion orally on March 31, 1995 "for all the reasons set forth in the memorandum in opposition."

Artmatic subsequently entered into settlement negotiations with Proctor & Gamble, the parent company of Noxell and Max Factor. In the settlement, Proctor & Gamble agreed not to oppose a motion by Artmatic to modify the Noxell and Max Factor default judgments by deleting the declarations of patent invalidity and unenforceability.

Artmatic filed that motion on July 5, 1995. In a letter dated July 6, 1995, Noxell and Max Factor stated that they do not oppose the proposed modification of the default judgments.

On July 5, 1995, Maybelline filed a summary judgment motion that sought to use the defensive collateral estoppel effect of the

Max Factor and Noxell default judgments of patent invalidity and noninfringement. Argument was heard on both motions on July 21, 1995.

## DISCUSSION

### Motion I: Modification of Default Judgment

Federal Rule of Civil Procedure 55 provides for default when a party has failed to plead or otherwise defend as provided by the rules. Fed.R.Civ.P. 55(a); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993). A judgment by default may be entered by the court on a party's application for a default judgment. Fed.R.Civ.P. 55(b)(2); *Enron*, 10 F.3d at 95. An entry of default may be set aside "for good cause," whereas a default judgment may be set aside only in accordance with Rule 60(b). Fed.R.Civ.P. 55(c).

▮▮▮▮ Federal Rule of Civil Procedure 60(b) provides various reasons for granting relief from a final judgment or order of the court.[1] In general, the district court's decision to grant relief under Rule 60(b) is reviewed for abuse of discretion. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d Cir.1994). Since Rule 60(b) allows extraordinary relief, it is invoked only if the moving party meets its burden of demonstrating "exceptional circumstances," and should not be used to circumvent other rules. *Id.* at 1142.

### Rule 60(b) Standards

▮▮▮▮ Courts have construed the Rule 60(b) standard for setting aside a default judgment as more stringent than the "good cause" standard for setting aside an entry of default, "because the concepts of finality and litigation repose are more deeply implicated" in a default judgment. *See, e.g., Enron*, 10 F.3d at 96. On a motion to set aside a default judgment, the defaulting party bears the

---

1. On motion and upon such terms as are just, the court may relieve a party … from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence …; (3) fraud …; (4) the judgment is void; (5) the judgment has been satis-

fied, released, or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.… F.R.Civ.P. 60(b).

854

burden of proof, *see In re Martin–Trigona*, 763 F.2d 503, 505 and n. 2 (2d Cir.1985), but doubts should be resolved in favor of the party seeking relief. *Enron*, 10 F.3d at 96.

In determining whether to set aside a default or a default judgment, the district court must analyze the following three factors: (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense or claim is presented. *See Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir.1994) (citing *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981)); *Enron*, 10 F.3d at 96. The district court must consider all three factors, *Commercial Bank*, 15 F.3d at 243, and should explain its ruling with explicit reference to the three factors. *Enron*, 10 F.3d at 96–97.

### Equitable and Prudential Considerations

Formerly, courts in this circuit had articulated a policy in favor of recognizing "the importance of honoring settlements over the finality of trial court judgments." *Harris Trust and Savings Bank v. John Hancock Mutual Life Insurance Co.*, 970 F.2d 1138, 1146 (2d Cir.), *cert. denied*, 507 U.S. 986, 113 S.Ct. 1585, 123 L.Ed.2d 151 (1992) (quoting *Nestle Co. v. Chester's Market, Inc.*, 756 F.2d 280, 283 (2d Cir.1985)). The court in *Nestle* had held that it was "an abuse of discretion for a district court to refuse to enter a vacatur pursuant to a settlement." 756 F.2d at 282. However, this policy has recently been modified by a more restrained approach towards permitting vacatur based on settlement.

Last term, the Supreme Court held that even where a judgment under review becomes moot due to a settlement agreement, the appellate court retains jurisdiction to grant or to withhold vacatur. *See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, —— U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (distinguishing cases mooted "through happenstance" from "mootness by reason of settlement" and disapproving vacatur based on the latter). In subsequent decisions, courts in the Second Circuit followed *Bancorp* by treating mootness through happenstance differently from mootness resulting from voluntary acts of the parties. *See Associated General Contractors of Connecticut, Inc. v. City of New Haven*, 41 F.3d 62, 67 (2d Cir.1994) (explaining that a party should be exempt from the adverse *res judicata* effects of a district court judgment only when it is denied the benefit of appellate review through no fault of its own); *Bragger v. Trinity Capital Enterprise Corp.*, 30 F.3d 14, 17 (2d Cir.1994) (declining to vacate judgment when the lower court ruling had already been subjected to appellate scrutiny); *Manufacturers Hanover Trust Co. v. Yanakas*, 11 F.3d 381, 384 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1993) (disapproving vacatur of decision from which appeal had been taken).

In a recent decision from the Southern District of New York, the court explicitly noted the erosion of the *Nestle* doctrine:

> It has yet to be determined whether the Supreme Court's frowning upon the routine use of vacatur in *U.S. Bancorp* would lead to refinement of *Nestle* in cases where a district court declined to vacate its own decision under Rule 60(b), although the holding in *Manufacturers Hanover* suggests *strongly* that this circuit is moving away from routine vacatur. It is, at least, clear from *Manufacturers Hanover* that vacatur should not be granted as of course, and should proceed from a careful consideration of public interest, either by the appellate court in the exercise of its own equitable power, or by the district court within the context of the Rule 60(b) motion.

*Aetna Casualty and Surety Company v. Home Insurance Co.*, 882 F.Supp. 1355, 1357 (S.D.N.Y.1995) (emphasis in original); *see also Keller v. Mobil Corp.*, 55 F.3d 94, 98 (2d Cir.1995) (noting that "[t]he public interest in having rules of procedure obeyed is at least as important as the public interest in encouraging settlement of disputes.").

### Rule 60(b) Standards Applied

#### 1. Willfulness

In general, on a motion to set aside a default judgment, the defaulting party must come forward with some explanation

for the default. *See, e.g., Sony Corp. v. Elm State Electronics,* 800 F.2d 317, 319 (2d Cir. 1986). For example, a default will be held willful if the party caused it intentionally. *Commercial Bank,* 15 F.3d at 244 (defendant purposely evaded service); *Action S.A. v. Marc Rich,* 951 F.2d 504, 507 (2d Cir.1991), *cert. denied,* 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992) (defendant admitted deliberately choosing not to appear in action). Courts have also held a default to be willful when a defendant knew about the complaint and failed to respond. *Marziliano v. Heckler,* 728 F.2d 151, 156 (2nd Cir.1984) (default held willful where defendant's attorney, without explanation, failed to inform the court about a stipulation extending defendant's time to respond). In addition, courts have generally held a default to be willful when a lawyer neglects a case for an extended period of time. *Walpex Trading Co. v. Yacimientos Petroliferos,* 109 F.R.D. 692 (S.D.N.Y.1986).

Although Artmatic is now represented by new counsel, they fail to present a valid excuse for the default.[2] A defaulting party's failure to provide any explanation or any affidavits concerning the default has been held to preclude a finding of "excusable neglect" for purposes of a motion to set aside a default judgment. *See, e.g., Frost Belt International Recording Enterprises, Inc. v. Cold Chillin' Records,* 758 F.Supp. 131, 135–36 (S.D.N.Y.1990); *Home Box Office v. Champs of New Haven, Inc.,* 837 F.Supp. 480, 484 (D.Conn.1993). Even under the older, more liberal standards, Artmatic has failed to carry an essential element of its burden under Rule 60(b), namely, that the default was not willful.

### 2. Prejudice

Max Factor and Noxell do not oppose Artmatic's motion for modification of the default judgments. Letter of July 6, 1995. The Court finds that Artmatic has met this element of its burden.

2. Recent decisions have increasingly suggested that failures of a party's chosen counsel are not reasonable bases for relief under Rule 60(b). *See, e.g., Russell v. Delco Remy Div. of General Motors Corp.,* 51 F.3d 746, 749 (7th Cir.1995);

It seems that Artmatic relies solely on this factor to justify the requested modification. Declaration of Robert Katz ¶ 3. However, lack of prejudice alone, absent other extraordinary circumstances, cannot overcome Artmatic's presumed willfulness. *Cf. Wagstaff-El v. Carlton Press Company,* 913 F.2d 56 (2d Cir.1990), *cert. denied,* 499 U.S. 929, 111 S.Ct. 1332, 113 L.Ed.2d 263 (1991) (vacating default judgment where plaintiff's claims were "either facially invalid or utterly unsupported," defendant had meritorious defense, and prejudice was not shown); *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 993 (E.D.N.Y.1995) (misunderstanding of procedural deadlines excused where defendants were subject to RICO treble damages, defendants had meritorious defense, and prejudice not shown). Therefore, even the demonstrable lack of prejudice does not overcome the finding that Artmatic has failed to meet its overall burden under Rule 60(b).

### 3. Meritorious Defense

█ Finally, a party seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. *Enron,* 10 F.3d at 98. A party's defense may be deemed meritorious for default purposes if the defense raises a significant issue; a party need not establish the merits of the defense conclusively. *Marziliano,* 728 F.2d at 156.

Artmatic has provided no basis from which this court could conclude that it had a defense against the counterclaims of Max Factor and Noxell. In the absence of evidence of a meritorious defense, the Court declines to find one which would support Artmatic's Rule 60(b) motion.

### Conclusion

Recent decisions in the Supreme Court and Second Circuit have made it clear that vacatur should not be granted as a matter of course. Although their motion is unopposed, Artmatic has not met the well-established legal test for Rule 60(b) relief. Further-

*United States v. Gelb,* 1991 WL 20011 (S.D.N.Y. 1991); *Langdon v. Proper,* 1991 WL 263554 (N.D.N.Y.1991); *Moser v. Bascelli,* 879 F.Supp 489 (E.D.Pa.1995).

more, Artmatic has not adequately demonstrated that its interest in setting aside the requested portions of the default judgments outweighs the public interest in finality and compliance with rules of procedure. In the absence of a convincing argument from Artmatic, the Court is unwilling to conclude that the extraordinary relief of Rule 60(b) is justified. For all these reasons, Artmatic's motion to set aside the default judgments is denied.

### Motion II: Summary Judgment Based on Default

Maybelline invokes principles of collateral estoppel as enunciated in *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), as a basis for defeating Artmatic's patent infringement claim against it. The collateral estoppel defense arises from the default judgments of invalidity and noninfringement of United States Patent No. 4,892,194 ('194) and Reissue Patent No. 33,-191 ('191) entered in favor of Max Factor and Noxell. See *Artmatic USA Cosmetics v. Maybelline Co.,* DN CV–94–1799 (E.D.N.Y. Sept. 16, 1994); *id.* (Oct. 7, 1994). Maybelline's motion presents the issues of whether, as a matter of law, collateral estoppel may arise from a declaratory judgment gained by default, and if so, whether it is appropriate in this case.

### Collateral Estoppel

Collateral estoppel, or issue preclusion, prevents the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to that judgment. *See Central Hudson Gas & Electric Corporation v. Empresa Naviera Santa,* 56 F.3d 359, 368 (2d Cir.1995). Four elements must be met in order for collateral estoppel to apply: (1) the issues of both proceedings must be identical; (2) the relevant issues were actually litigated and decided in the prior proceeding; (3) there must have been "full and fair opportunity" for the litigation of the issues in the prior proceeding; and (4) the issues were necessary to support a valid and final judgment on the merits. *Id.*

Collateral estoppel differs from res judicata, or claim preclusion, in that res judicata binds only "the parties to the suit and their privies" as to all claims that could have been raised concerning the transaction at issue. *See id.* at 366. The modern principle of privity bars relitigation of the same cause of action against a new defendant "where the new defendant has a sufficiently close relationship to the original defendant," such as when the new defendant participated in or controlled the defense of the prior action. *See id.* at 368. By contrast, collateral estoppel may bind those not party or privy to the prior action, as long as the four criteria named above are met. *Id.*

### Collateral Estoppel of Default Judgment

The majority view is that collateral estoppel based on default judgments is undesirable. *See In re Gottheiner,* 703 F.2d 1136, 1140 (9th Cir.1983) ("The defaulting party will certainly lose that lawsuit, but the default judgment is not given collateral estoppel effect"); *Grip–Pak, Inc. v. Illinois Tool Works, Inc.,* 694 F.2d 466, 469 (7th Cir.), *cert. denied* 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1982) ("[A] default judgment is not a proper basis for collateral estoppel"); *Matter of McMillan,* 579 F.2d 289, 293 (3d Cir.1978) ("The preponderant view is that . . . a default judgment has no collateral estoppel effect."); *West Indian Sea Island Cotton v. Threadtex, Inc.,* 761 F.Supp. 1041, 1053 (S.D.N.Y.1991) (collateral estoppel held inapplicable where default was based on plaintiff's failure to answer interrogatories); *Super Star Sneakers v. Bata Shoe Co.,* 508 F.Supp. 260, 262 (E.D.N.Y.1981) ("[T]his court agrees with the 'better view' that a default judgment has no collateral estoppel effect"). *See generally* 18 Wright, Miller & Kane, *Federal Practice & Procedure,* § 4442, n. 3; 1 Restatement (Second) of Judgments § 27 comment e (1982) at p. 257.

At the same time, courts have recognized the occasional tension between this view and the general preference for repose in litigation. *See, e.g., In re Raynor,* 922 F.2d 1146, 1149–50 (4th Cir.1991) (creditor could not invoke default judgment finding of fraud for collateral estoppel even though court re-

fused to set aside default judgment itself). Even a finding of willful default has been held not to justify the application of collateral estoppel to a default judgment. *See Technical Chemical Company v. IG–LO Products Corp.,* 812 F.2d 222, 224–25 (5th Cir.1987). Therefore, the Court's refusal to set aside the default judgments does not compel the Court to give them preclusive effect.

■■■ Assuming that a default judgment may, in exceptional circumstances, give rise to collateral estoppel, the Court must consider the further issue of whether such an exception is appropriate here. Maybelline relies on a tax case, *U.S. v. Martin,* 395 F.Supp. 954 (S.D.N.Y.1975), and a bankruptcy court decision, *In re Townview Nursing Home,* 28 B.R. 431, 438 (Bankr.S.D.N.Y. 1983), to advocate a "foreseeability" exception to the general rule against permitting collateral estoppel based on default judgments. Under this view, a litigant is bound by a default judgment to the extent he reasonably should have foreseen other parties having a stake in the outcome as to which he defaulted.

However, the limited circumstances in which the foreseeability exception has been applied are dissimilar from those here. Furthermore, the courts have developed a separate doctrine on the question of when judgments of patent invalidity may preclude litigation of that issue in subsequent proceedings.

### Collateral Estoppel As To Patent Invalidity

■■■ The leading case on issue preclusion in patent litigation is *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), *on remand* 334 F.Supp. 47 (N.D.Ill.). *Blonder–Tongue* eviscerated the previous rule of "mutuality of estoppel" in patent cases, whereby a patentee was estopped from bringing an infringement suit only against the party who had successfully litigated the invalidity of the patent. Under the rule announced in *Blonder–Tongue,* a party may be estopped against all parties from asserting a patent once proved invalid, as long as he "had a full and fair chance to litigate the validity of his patent in an earlier

case." *Id.,* 402 U.S. at 333, 91 S.Ct. at 1445. The Supreme Court recognized, however, that the decision of whether to apply collateral estoppel must be made on a case by case basis.

> [A]s is so often the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision will necessarily rest on the trial court's sense of justice and equity.

*Id.* at 333–34, 91 S.Ct. at 1445–46. *See also Mendenhall v. Barber–Greene Co.,* 26 F.3d 1573, 1584 (Fed.Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 582, 130 L.Ed.2d 496 (1994) ("Estoppel … is not appropriate in all cases where it might be interposed and its use is left to the sound discretion of the court."). Since the determination of whether to apply collateral estoppel rests within the court's discretion, it is appropriate to consider the procedural context of Maybelline's motion.

### Maybelline's Previous Motion For Default Judgement

■■■ Artmatic argues that this motion is Maybelline's attempt to relitigate a previous, unsuccessful motion for a default judgment on its counterclaim. Maybelline does not respond directly to this contention, dismissing it instead as "clearly irrelevant." Reply Brief, at 6.

Nonetheless, for purposes of collateral estoppel, the Court may treat Maybelline's prior unsuccessful motion for a default judgment as an equitable factor. In the course of Maybelline's earlier motion, this court considered whether Maybelline had demonstrated willfulness, prejudice, or lack of a meritorious defense by Artmatic *as to Maybelline's own counterclaims.* Default Opposition Brief, at 5–9. As Artmatic then argued, Maybelline had unsuccessfully protested against the pending renewal of Artmatic's patent application under 37 C.F.R. § 1.291 and unsuccessfully requested reexamination of the patent pursuant to 35 U.S.C. § 302. Default Opposition Brief, at 8. These facts raised issues sufficient to defeat Maybelline's direct motion for default judgment. The denial of that motion, combined with the intrinsic presumption of patent validity, 35 U.S.C.

§ 302, weigh against Maybelline's summary judgment motion.

In addition, policy reasons weigh against granting Maybelline's summary judgment motion. It would be inconsistent to permit Maybelline to benefit from default judgments secured by Max Factor and Noxell when its own motion for default judgment was denied. To hold otherwise would encourage defendants in a multi-party lawsuit to bring individual motions for a default judgment that could nonetheless be shared by all defendants. The decision in *Blonder–Tongue* was designed to eliminate just this type of inefficiency.

### Conclusion

Granting Maybelline's summary judgment motion would require the Court to make exceptions to the widely-accepted doctrines that default judgments generally do not have preclusive effect, and that judgments of patent invalidity generally apply to third parties only when the issue has been "fully and fairly litigated." The application of the "foreseeability" exception to the facts here would require a broader application of that principle than this court is willing to make. In addition, such a disposition would create an anomaly with the Court's previous denial of Maybelline's motion for default judgement. For all these reasons, Maybelline's motion for summary judgment is denied.

SO ORDERED.