Gwendolyn O. AUSTIN, Plaintiff,

v.

Gerard W. FORD and Eileen O. Ford, Defendants.

No. 95 CIV. 3730 (RWS).

United States District Court, S.D. New York.

Aug. 19, 1998.

Robert J. Bach, New York City, for Plaintiff.

Hollyer, Brady, Smith, Troxell, Barrett Rockett, Hines & Mone, New York City (Mary C. Mone, of counsel), for Defendants.

## OPINION

SWEET, District Judge.

Plaintiff Gwendolyn O. Austin ("Austin") and Defendants Gerard W. and Eileen O. Ford, as Trustees, and Ford Models, Inc. ("Ford Models" and collectively, the "Defendants") have jointly moved pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to vacate the judgment of the Court in *Austin v. Ford*, No. 95 Civ. 3730, 1998 WL 88744 (S.D.N.Y. Mar. 2, 1998), on the ground that they have reached a settlement agreement conditioned upon vacatur. For the reasons set forth below, the motion to vacate judgment is denied.

### Parties

Austin is a former employee of Ford Models and a New Jersey resident.

Ford Models, a New York State Corporation with principal offices in New York City, is an international model management company.

Gerard W. Ford and Eileen O. Ford are trustees of the Ford Models Pension Retirement Plan (the "Pension Plan") and Profit Sharing Plan (the "Profit Sharing Plan" and collectively, the "Plans").

### Facts and Prior Proceedings

The prior proceedings and facts are set forth in the previous opinion of this Court, dated March 2, 1998, familiarity with which is assumed. *See Austin*, 1998 WL 88744, at *1–*2.

In her Third Amended Complaint, filed on January 10, 1997, Austin alleged nine claims: five breaches of fiduciary duty, a violation of 29 U.S.C. § 1132(c)(1), assertions that she was deprived of her proportionate share of the intermingled investment gains and her share in all investment vehicles, and a claim for consequential damages.

The Defendants moved for summary judgment on July 17, 1997, and on September 19, 1997 Austin cross-moved for summary judgment.

In December 1997, Defendants proposed a settlement agreement to Austin.[1] Austin rejected Defendants' offer and made a counterproposal. When the Court issued its decision on the summary judgment motions on March 2, 1998, Defendants had not yet responded to Austin's counteroffer. The opinion, which granted in part and denied in part Austin's and Defendants' motions, disposed of all claims.

The parties apparently resumed settlement discussions thereafter. Defendants again extended their offer of December 1997, but on the condition of vacatur of the Court's judgment. Vacatur would put the parties in the positions they would have been in, if Austin had accepted in December. Austin accepted the offer, and the parties entered into a settlement agreement, dated June 11, 1998 (the "Settlement Agreement"). The effectiveness of the agreement is expressly conditioned upon, among other things, the filing of this joint motion and vacatur.

### Discussion

A motion to vacate a judgment under Rule 60(b) is addressed to the sound discretion of the district court. *See Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir.1986); *Jewelers Vigilance Comm., Inc. v. Vitale*

---

**1.** Defendants' settlement offer would have compensated Austin for (1) any additional sums due on her claim concerning treatment of her Pension Plan and Profit Sharing Plan accounts following her employment termination; (2) any amounts related to any alleged delay in Austin's receipt of copies of the Plans; and (3) Austin's claimed attorney's fees.

*Inc.*, 177 F.R.D. 184, 186 (S.D.N.Y.1998). In determining whether to vacate judgment, a court must balance the benefits of honoring the parties' settlement agreement against the public interest in the finality of judgments and the development of decisional law. *See id.* at 186.

Previously in the Second Circuit, district court judgments were vacated where the parties reached a settlement while the case was pending on appeal. *See Nestle Co., Inc. v. Chester's Market, Inc.*, 756 F.2d 280, 282–83 (2d Cir.1985) (noting "the importance of honoring settlements over the finality of trial court judgments"). More recent decisions of the Second Circuit and United States Supreme Court, however, have caused several courts in this district to question the validity of the principle espoused in *Nestle. See Vitale*, 177 F.R.D. at 186, 188 (denying vacatur where plaintiff's interest is in avoiding publicity by expunging an unfavorable opinion from the record); *National Union Fire Ins. Co. of Pennsylvania v. Cohen*, No. 92 Civ. 9500, 1997 WL 639260, at *3–*4 (S.D.N.Y. Oct. 16, 1997) (granting vacatur of summary judgment on all but one of the claims where settlement would obviate the need for trial); *Agee v. Paramount Communications, Inc.*, 932 F.Supp. 85, 87–88 (S.D.N.Y.1996) (finding that public interest is better served by preserving judgment where it would deter improper litigation practices and frivolous litigation); *Aetna Casualty and Sur. Co. v. Home Ins. Co.*, 882 F.Supp. 1355, 1356–57 (S.D.N.Y.1995) (denying vacatur where the development of decisional law outweighs the parties' interest in settlement); *see also Artmatic USA Cosmetics v. Maybelline Co.*, 906 F.Supp. 850, 854–56 (E.D.N.Y.1995) (denying vacatur where the moving party "has not adequately demonstrated that its interest in setting aside ... default judgments outweighs the public interest in finality and compliance with rules of procedure").

In *Manufacturers Hanover Trust Co. v. Yanakas*, 11 F.3d 381 (2d Cir.1993), the Second Circuit refused to vacate a district court judgment on appeal where after the Court of Appeals had filed its opinion but had not issued the mandate, the parties reached a settlement agreement conditioned upon vacatur. *Id.* at 384. Although the Second Circuit explicitly limited its holding to only those cases already reviewed by the Court of Appeals, it nonetheless undermined its policy of "honoring settlements over the finality of trial court judgments," when, quoting the Seventh Circuit, it stated,

> [w]hen a clash between genuine adversaries produces a precedent, ... the judicial system ought not allow the social value of that precedent, created at cost to the public and other litigants, to be a bargaining chip in the process of settlement. The precedent, a public act of a public official, is not the parties' property.

*Id.* at 385 (*quoting In re Mem'l Hosp. of Iowa County, Inc.*, 862 F.2d 1299, 1302 (7th Cir.1988)). The court furthermore cautioned, "[a] policy permitting litigants to use the settlement process as a means of obtaining the withdrawal of unfavorable precedents is fraught with potential abuse.... [A]n opinion is a public act of the government which may not be expunged by private agreement." *Id.* (citations omitted).

Subsequently, the United States Supreme Court addressed whether federal appellate courts should vacate judgments of lower courts where the parties settle after the case has been reviewed on appeal or certiorari has been sought. *See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 19, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). The Court held that vacatur of a judgment under a review was an equitable remedy that would be granted only under "exceptional circumstances;" settlement alone was not sufficient grounds. *Id.* at 26, 115 S.Ct. 386. The Court reasoned, " '[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes the public interest would be served by a vacatur.' " *Id.* at 26–27, 115 S.Ct. 386 (*quoting Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40, 114 S.Ct. 425, 126 L.Ed.2d 396 (1993) (Stevens, J., dissenting)). In dicta, the Court additionally suggested that the same policies and reasoning would apply to vacatur of district court

judgments before review by the Court of Appeals. *See id.* at 28, 114 S.Ct. 425.

In light of *Yanakas* and *U.S. Bancorp,* several courts in this district have declined to grant vacatur as a matter of course where a settlement is reached after judgment. *See Vitale,* 177 F.R.D. at 186; *Cohen,* 1997 WL 639260, at *3; *Agee,* 932 F.Supp. at 87; *Aetna,* 882 F.Supp. at 1357. Courts instead have balanced the benefits of settlement and vacatur against the public interest in the finality of judgment. *See Vitale,* 177 F.R.D. at 186; *Cohen,* 1997 WL 639260, at *3; *Agee,* 932 F.Supp. at 87; *Aetna,* 882 F.Supp. at 1356.

■ In the instant case, the parties have not indicated any benefits that would result from honoring the Settlement Agreement and vacating judgment. It is worth noting, however, that because this Court's summary judgment decision settled all claims, *see Austin,* 1998 WL 88744, at *7, the subsequent Settlement Agreement will not spare the parties or this Court the time and expense of future litigation. *See Vitale,* 177 F.R.D. at 187; *Cohen,* 1997 WL 639260, at *4.

Public interest in finality of judgment encompasses the development of decisional law, the importance of the opinion to nonparties, and the deterrence of frivolous litigation. *See Vitale,* 177 F.R.D. at 188; *Agee,* 932 F.Supp. at 88; *Aetna,* 882 F.Supp. at 1357. Moreover, public interest in preserving judgment has been recognized where "considerable judicial resources" would have been "expended for nought if vacatur were ordered". *Aetna,* 882 F.Supp. at 1358 (denying vacatur because, among other reasons, parties reached settlement after the court issued judgment on a 12–day trial).

In the instant motion, the parties contend that vacatur will not have any impact on the development of decisional law. They assert that the factual circumstances of the case pertain only to Austin, and because the disputed benefit plans have been terminated, future plan administration is not at issue.

Notwithstanding these contentions, public interest in finality of judgment in this case controls. The settlement agreement ultimately accepted by both parties was not the counterproposal to which Defendants claim they did not have time to respond before this Court's judgment disposed of all claims in March 1998, but Defendants' initial offer made in December 1997 and rejected by Austin. When Austin declined the December settlement offer, however, she risked receiving a less favorable judgment from the Court. Granting vacatur therefore would condone wasteful utilization of the court's resources and encourage future litigants to hedge their bets by postponing settlement until after learning the opinion of the court. As the Supreme Court said with respect to settlement after appellate review,

> while the availability of vacatur may facilitate settlement after the judgment under review has been rendered and certiorari granted (or appeal filed), it may deter settlement at an earlier stage. Some litigants, at least, may think it worthwhile to roll the dice rather than settle in the district court, or in the court of appeals, if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur.

*U.S. Bancorp.,* 513 U.S. at 27–28, 115 S.Ct. 386.

Thus public interest in the finality of judgment demands that vacatur be denied.

### Conclusion

For the reasons set forth above, the parties' motion to vacate judgment is denied.

It is so ordered.