# IZUMI SEIMITSU KOGYO KABUSHIKI KAISHA *v.*
# U. S. PHILIPS CORP. ET AL.

No. 92–1123. Argued October 12, 1993—Decided November 30, 1993

*Herbert H. Mintz* argued the cause for petitioner. With him on the briefs were *Robert D. Litowitz, Jean Burke Fordis, David S. Forman,* and *William L. Androlia.*

*Garrard R. Beeney* argued the cause for respondents. With him on the brief were *William E. Willis, John L. Hardiman, Sheldon Karon,* and *Paul M. Dodyk.*

*Thomas G. Hungar* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Acting Solicitor General Bryson, Acting Assistant Attorney General Schiffer, Acting Deputy Solicitor General Kneedler, Leonard Schaitman,* and *John P. Schnitker.**

PER CURIAM.

In order to reach the merits of this case, we would have to address a question that was neither presented in the petition for certiorari nor fairly included in the one question that was presented. Because we will consider questions not raised in the petition only in the most exceptional cases, and because we conclude this is not such a case, we dismiss the writ of certiorari as improvidently granted.

Petitioner was named as a defendant, along with respondent Windmere Corporation, in an action brought by respondent U. S. Philips Corporation in the District Court for the Southern District of Florida claiming that the defendants had infringed Philips' patent rights and engaged in unfair trade competition. Windmere counterclaimed for antitrust violations. At the first trial of the action, judgment was entered on a jury verdict for Philips on its patent infringement claim, and neither Izumi nor Windmere appealed. Philips also prevailed on Windmere's antitrust counterclaim, and the District Court ordered a new trial on the unfair competition

---

*Briefs of *amici curiae* urging reversal were filed for Sears Roebuck & Co. by *Roger D. Greer* and *Kara F. Cenar;* and for Trial Lawyers for Public Justice by *Jill E. Fisch* and *Arthur H. Bryant.*

*Jay M. Smyser* filed a brief for the Product Liability Advisory Council, Inc., as *amicus curiae* urging affirmance.

claim. On Windmere's interlocutory appeal, the United States Court of Appeals for the Federal Circuit reversed the judgment on the antitrust counterclaim and remanded the case for a new trial. *U. S. Philips Corp.* v. *Windmere Corp.*, 861 F. 2d 695 (CA Fed. 1988), cert. denied, 490 U. S. 1068 (1989). Izumi took no further part in the litigation.

A second jury found in favor of Windmere both on Philips' unfair competition claim and on Windmere's antitrust counterclaim, and judgment was entered in favor of Windmere on the latter for more than $89 million. Philips appealed both judgments to the Federal Circuit. Before the Court of Appeals decided the case, however, Windmere and Philips reached a settlement wherein Philips agreed to pay Windmere $57 million. Windmere and Philips also agreed jointly to request the Court of Appeals to vacate the District Court's judgments, although the settlement was not conditioned on the Federal Circuit granting the vacatur motion. After Windmere and Philips filed their joint motion to vacate, petitioner sought to intervene on appeal for purposes of opposing vacatur.

The Court of Appeals denied Izumi's motion to intervene. *U. S. Philips Corp.* v. *Windmere Corp.*, 971 F. 2d 728, 730–731 (CA Fed. 1992). It reasoned that Izumi was not a party to the second trial, and that its financial support of Windmere's litigation as an indemnitor was not sufficient to confer party status. The Court of Appeals also concluded that Izumi's interest in preserving the judgment for collateral estoppel purposes was insufficient to provide standing.[1] *Ibid.* The Court of Appeals proceeded to review the vacatur motion and concluded that, because the settlement included all the parties to the appeal, vacatur was appropriate. *Id.,* at 731.

Title 28 U. S. C. § 1254(1) provides, in relevant part:

---

[1] Petitioner hoped to preserve the judgment for use in a suit brought by Philips against Sears and Izumi in the United States District Court for the Northern District of Illinois. As with Windmere, Izumi has agreed to indemnify Sears' litigation expenses.

"Cases in the courts of appeals may be reviewed by the Supreme Court . . .

"(1) [B]y writ of certiorari granted upon the petition of any *party* to any civil or criminal case, before or after rendition of judgment or decree." (Emphasis added.)

Because the Court of Appeals denied petitioner's motion for intervention, Izumi is not a party to this particular civil case. One who has been denied the right to intervene in a case in a court of appeals may petition for certiorari to review that ruling, *Automobile Workers* v. *Scofield*, 382 U. S. 205, 208–209 (1965), but Izumi presented no such question in its petition for certiorari. It presented a single question for our review: "Should the United States Courts of Appeals routinely vacate district court final judgments at the parties' request when cases are settled while on appeal?" Because this question has divided the Courts of Appeals,[2] we granted certiorari. 507 U. S. 907 (1993). In its brief on the merits, petitioner added the following to its list of questions presented: "Whether the court of appeals should have permitted Petitioner to oppose Respondents' motion to vacate the district court judgment."

This Court's Rule 14.1(a) provides, in relevant part: "The statement of any question presented [in a petition for certiorari] will be deemed to comprise every subsidiary question fairly included therein. Only the questions set forth in the petition, or fairly included therein, will be considered by the

---

[2] Like the Federal Circuit, the Second Circuit will generally grant motions to vacate when parties settle on appeal. See *Nestle Co.* v. *Chester's Market, Inc.*, 756 F. 2d 280, 282–284 (CA2 1985). The Third, District of Columbia, and Seventh Circuits will generally deny such motions. See *Clarendon Ltd.* v. *Nu-West Industries, Inc.*, 936 F. 2d 127 (CA3 1991); *In re United States*, 927 F. 2d 626 (CADC 1991); *In re Memorial Hospital of Iowa County, Inc.*, 862 F. 2d 1299 (CA7 1988). The Ninth Circuit requires district courts to balance "the competing values of finality of judgment and right to relitigation of unreviewed disputes." *Ringsby Truck Lines, Inc.* v. *Western Conference of Teamsters*, 686 F. 2d 720, 722 (1982).

Court."[3] Unless we can conclude that the question of the denial of petitioner's motion to intervene in the Court of Appeals was "fairly included" in the question relating to the vacatur of final judgments at the parties' request, Rule 14.1 would prevent us from reaching it.

It seems clear that a challenge to the Federal Circuit's denial of petitioner's motion to intervene is not "subsidiary" to the question on which we granted certiorari. On the contrary, it is akin to a question regarding a party's standing,[4] which we have described as a "threshold inquiry" that " 'in no way depends on the merits' " of the case. *Whitmore* v. *Arkansas*, 495 U. S. 149, 155 (1990) (quoting *Warth* v. *Seldin*, 422 U. S. 490, 500 (1975)).

We also believe that the question is not "fairly included" in the question presented for our review.[5] A question which is merely "complementary" or "related" to the question presented in the petition for certiorari is not " 'fairly included

---

[3] The initial version of this Rule, promulgated in 1954, stated: "The statement of a question presented will be deemed to include every subsidiary question fairly comprised therein. Only the questions set forth in the petition or fairly comprised therein will be considered by the court." Rule 23.1(c), Rules of the Supreme Court of the United States, 346 U. S. 951, 972 (1954). The current version dates back to 1980, when we amended the Rules. The 1980 changes in syntax obviously did not alter the substance of the Rule.

[4] The Court of Appeals actually dismissed Izumi's motion in terms of standing, concluding that Izumi did "not have standing to oppose the joint motion." *U. S. Philips Corp.* v. *Windmere Corp.*, 971 F. 2d 728, 731 (CA Fed. 1992).

[5] We note that the fact that the parties devoted a portion of their merits briefs to the intervention issue does not bring that question properly before us. *Radzanower* v. *Touche Ross & Co.*, 426 U. S. 148, 151, n. 3 (1976). Nor does "[t]he fact that the issue was mentioned in argument . . . bring the question properly before us." *Mazer* v. *Stein*, 347 U. S. 201, 206, n. 5 (1954). Contrary to the dissent's suggestion, see *post*, at 35–36, the fact that Izumi discussed this issue in the text of its petition for certiorari does not bring it before us. Rule 14.1(a) requires that a subsidiary question be fairly included in the *question presented* for our review.

therein.'" *Yee* v. *Escondido,* 503 U. S. 519, 537 (1992). Thus, in *Yee,* we concluded that the question whether an ordinance effected a physical taking did not include the related question of whether it effected a regulatory taking. *Ibid.* Whether petitioner should have been granted leave to intervene below is quite distinct, both analytically and factually, from the question whether the Court of Appeals should vacate judgments where the parties have so stipulated. The questions are even less related or complementary to one another than were the questions in *Yee.*

The intervention question being neither presented as a question in the petition for certiorari nor fairly included therein, "Rule 14.1(a) accordingly creates a heavy presumption against our consideration" of that issue. *Ibid.* Rule 14.1(a), of course, is prudential; it "does not limit our power to decide important questions not raised by the parties." *Blonder-Tongue Laboratories, Inc.* v. *University of Ill. Foundation,* 402 U. S. 313, 320, n. 6 (1971). A prudential rule, however, is more than a precatory admonition. As we have stated on numerous occasions, we will disregard Rule 14.1(a) and consider issues not raised in the petition " 'only in the most exceptional cases.'" *Yee, supra,* at 535 (quoting *Stone* v. *Powell,* 428 U. S. 465, 481, n. 15 (1976)); see also *Berkemer* v. *McCarty,* 468 U. S. 420, 443, n. 38 (1984) ("Absent unusual circumstances, . . . we are chary of considering issues not presented in petitions for certiorari").[6]

---

[6] Even before the first version of the current Rule 14.1(a) was adopted, we indicated our unwillingness to decide issues not presented in petitions for certiorari. As we stated in *General Talking Pictures Corp.* v. *Western Electric Co.,* 304 U. S. 175, 179 (1938): "One having obtained a writ of certiorari to review specified questions is not entitled here to obtain decision on any other issue." And as Justice Jackson stated, writing for a plurality in *Irvine* v. *California,* 347 U. S. 128, 129–130 (1954): "We disapprove the practice of smuggling additional questions into a case after we grant certiorari. The issues here are fixed by the petition unless we limit the grant, as frequently we do to avoid settled, frivolous or state law questions."

We have made exceptions to Rule 14.1(a) in cases where we have overruled one of our prior decisions even though neither party requested it. See, *e. g., Blonder-Tongue, supra,* at 319–321. We have also decided a case on nonconstitutional grounds even though the petition for certiorari presented only a constitutional question. See, *e. g., Boynton* v. *Virginia,* 364 U. S. 454, 457 (1960); *Neese* v. *Southern R. Co.,* 350 U. S. 77, 78 (1955). We must also notice the possible absence of jurisdiction because we are obligated to do so even when the issue is not raised by a party. See, *e. g., Lake Country Estates, Inc.* v. *Tahoe Regional Planning Agency,* 440 U. S. 391, 398 (1979); *Liberty Mut. Ins. Co.* v. *Wetzel,* 424 U. S. 737, 740 (1976). And we may, pursuant to this Court's Rule 24.1(a), "consider a plain error not among the questions presented but evident from the record and otherwise within [our] jurisdiction to decide." See, *e. g., Wood* v. *Georgia,* 450 U. S. 261, 265, n. 5 (1981); see generally R. Stern, E. Gressman, & S. Shapiro, Supreme Court Practice § 6.26 (6th ed. 1986) (discussing Rule 14.1(a) and its exceptions).

The present case bears scant resemblance to those cited above in which we have made exceptions to the provisions of Rule 14.1. While the decision on any particular motion to intervene may be a difficult one, it is always to some extent bound up in the facts of the particular case. Should we undertake to review the Court of Appeals' decision on intervention, it is unlikely that any new principle of law would be enunciated, as is evident from the briefs of the parties on this question. As we said in *Yee,* Rule 14.1(a) helps us "[t]o use our resources most efficiently" by highlighting those cases "that will enable us to resolve particularly important questions." 503 U. S., at 536. The Court of Appeals' disposition of petitioner's motion to intervene is simply not such a question.[7]

---

[7] JUSTICE STEVENS in dissent urges that our disposition of *United States* v. *Williams,* 504 U. S. 36 (1992), provides authority for reaching the merits of this case. We disagree. There we applied a different prudential

Should we disregard the Rule here, there would also be a natural tendency—to be consciously resisted, of course—to reverse the holding of the Court of Appeals on the intervention question in order that we could address the merits of the question on which we actually granted certiorari; otherwise, we would have devoted our efforts *solely* to addressing a relatively factbound issue which does not meet the standards that guide the exercise of our certiorari jurisdiction. Our faithful application of Rule 14.1(a) thus helps ensure that we are not tempted to engage in ill-considered decisions of questions not presented in the petition. Faithful application will also inform those who seek review here that we continue to strongly "disapprove the practice of smuggling additional questions into a case after we grant certiorari." *Irvine* v. *California*, 347 U. S. 128, 129 (1954) (plurality opinion).

Izumi was not a party to the appeal below, and the Court of Appeals denied its motion to intervene there. Because we decline to review the propriety of the Court of Appeals' denial of intervention, petitioner lacks standing under §1254(1) to seek review of the question presented in the petition for certiorari. The writ of certiorari is therefore dismissed as improvidently granted.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BLACKMUN joins, dissenting.

When both parties to a case pending on appeal ask the appellate court to vacate the judgment entered by the trial court because they have settled their differences, should the court routinely take that action without first considering its effect on third parties? Subsumed within that question is the related question whether an affected third party should

---

rule—the one which precludes our review of an issue that "was not pressed or passed upon below." *Id.*, at 41 (internal quotation marks omitted). Because the issue there *had been passed upon* by the lower court, see *id.*, at 39, we reviewed it.

be allowed to intervene to object to the vacation of the judgment. In this case the Court of Appeals for the Federal Circuit answered both of those questions incorrectly.

Petitioner Izumi manufactures electric razors in Japan that it sells to American distributors, including Windmere and Sears Roebuck. It has indemnified those distributors against liability for patent or trade dress infringement. Respondent Philips is a competitor that has been engaged in protracted litigation with Izumi's distributors. In a case filed by respondent in the Southern District of Florida, the trial court entered a judgment dismissing respondent's trade dress claims and awarding Windmere $89,644,257 plus attorney's fees, interest, and costs on an antitrust counterclaim. In a second case filed by respondent in the Northern District of Illinois, the District Court held that the Florida judgment collaterally estopped respondent from pursuing certain claims against Sears. Thereafter, respondent and Windmere settled their differences on terms that included a payment to Windmere of $57 million and Windmere's agreement to join in a motion to vacate the Florida judgment.

Izumi was not a party to the settlement. Promptly after the settling parties filed their motion in the Federal Circuit, Izumi tried to object to the vacation of the Florida judgment. The court denied the motion on the ground that Izumi lacked standing, because it was not a party and its interest was insufficient to support intervention. The court then granted the motion to vacate. When that action was brought to the attention of the District Court in Illinois, it reinstated claims against Izumi's indemnitee (Sears).

Izumi filed a petition for certiorari presenting a single question.[1] The petition itself devoted an entire section to refuting the Federal Circuit's argument that Izumi's interest

---

[1] "Should the United States Court of Appeals routinely vacate district court final judgments at the parties' request when cases are settled while on appeal?" Pet. for Cert. i.

was too insignificant to justify intervention.[2] In its brief in opposition, respondent argued that the intervention issue was not properly raised.[3] After consideration of respondent's arguments, we nevertheless decided to grant certiorari. We might, of course, have expressly directed the parties to argue the two questions separately, but it is now apparent that such direction was unnecessary because their briefs on the merits canvassed both issues.

The question whether Izumi should have been allowed to intervene in the Court of Appeals is a "subsidiary question fairly included" in the question presented, Rule 14.1(a), because the answer to the intervention question depends on the validity of the practice of routinely granting settling parties' motions to vacate trial court judgments. For if that routine practice is proper, then there is no point in allowing intervention. On the other hand, if vacation should ever be denied because of the potential impact on third-party interests, it was error to deny intervention in this case.[4] If routine vacation is improper, the Court of Appeals' reasons for denying intervention were clearly insufficient. Izumi obviously had a stake in the outcome of the motion, because the vacation of the Florida judgment significantly increased the potential liability and litigation expenses of its indemnitee. The fact that Izumi was not a formal party to the case before it sought to intervene is irrelevant because the very purpose of intervention is to acquire the status of a party.

---

[2] The substantive portion of Izumi's petition for certiorari was divided into four lettered sections. In the fourth, section D, petitioner argued that the prospect of relitigation in Illinois and Izumi's interest in the judgment against Windmere gave it "an immediate and direct interest in challenging the propriety of granting vacatur following settlement," and therefore that "Izumi was entitled to intervene in the appeal for the purposes of opposing vacatur." Pet. for Cert. 14, 15.

[3] Brief in Opposition 2, 4–5.

[4] See *National Union Fire Ins. Co. of Pittsburgh* v. *Seafirst Corp.*, 891 F. 2d 762, 764 (CA9 1989) (intervention granted to allow nonparty to challenge vacation of judgment).

Even if I were to concede that the intervention question is not "fairly included" in the question presented, I would still think it inappropriate to dismiss the writ of certiorari as improvidently granted. In view of the fact that petitioner raised and discussed the issue in its petition for certiorari, the Court's decision today rests purely on the technicality that the petition failed to frame a separate question to introduce this argument. Given the Court's occasional practice of ordering parties to address questions they have not raised,[5] it is ironic that the omission in this case should be given critical weight. Indeed, the Court's decision punishes this technical error much more severely than it has ever punished similar violations. Until today, the Court had never dismissed a case because of a violation of Rule 14.1(a) or its predecessors.[6]

To justify its decision, the majority quotes *Yee* v. *Escondido*, 503 U. S. 519 (1992), for the proposition that Rule 14.1(a), although prudential, is disregarded " ' "only in the most exceptional cases," ' "[7] *ante*, at 32. But the majority omits the very next words, which explain that it is proper to

---

[5] *Christianson* v. *Colt Industries Operating Corp.*, 484 U. S. 985 (1987) (directing parties to brief and argue jurisdictional question); *Eisen* v. *Carlisle & Jacquelin*, 414 U. S. 908 (1973) (same); *Payne* v. *Tennessee*, 498 U. S. 1076 (1991); *Patterson* v. *McLean Credit Union*, 485 U. S. 617 (1988).

[6] Rule 14.1(a) itself dates only to 1990, but the 1990 revisions merely renumbered a rule which has not substantially changed since 1954. Rule 21.1(a) (1980) (identical language to present rule); Rule 23.1(c) (1954) ("Only the questions set forth in the petition or fairly comprised therein will be considered by the court"). The Court never dismissed certiorari under either of these earlier rules. Even under the harsher rule that governed between 1939 and 1954, which allowed consideration only of "questions specifically brought forward by the petition," the Court never sanctioned violations with dismissal of certiorari as improvidently granted. Rule 38.2 (1939).

[7] The Court also notes that jurisdictional questions are a traditional exception to the rule that an issue must fall under a question presented, *ante*, at 33, but the Court fails to recognize that the issue here—the propriety of intervention—is jurisdictional and thus falls within that exception.

set aside the rule "where reasons of urgency *or of economy* suggest the need to address the unpresented question." 503 U. S., at 535 (1992) (emphasis added). Judicial economy is not served by invoking prudential rules "*after* we have granted certiorari and the case has received plenary consideration on the merits. Our decision to grant certiorari represents a commitment of scarce judicial resources with a view to deciding the merits of one or more of the questions presented in the petition." *Oklahoma City* v. *Tuttle*, 471 U. S. 808, 815–816 (1985) (emphasis in original). See also *Canton* v. *Harris*, 489 U. S. 378, 384 (1989). The Court recently used stronger language when it refused to dismiss a case on prudential grounds raised and rejected in the process of granting certiorari. The majority noted that the dissent

> "proposes that—after briefing, argument, and full consideration of the issue by all the Justices of this Court— we now decline to entertain this petition for the same reason we originally rejected it, and that we dismiss it as improvidently granted. That would be improvident indeed. Our grant of certiorari was entirely in accord with our traditional practice, though even if it were not it would be imprudent (since there is no doubt that we have jurisdiction to entertain the case) to reverse course at this late stage." *United States* v. *Williams*, 504 U. S. 36, 40 (1992).[8]

---

[8] The majority notes that *Williams* concerned a different prudential rule—the one which precludes review of an issue that " 'was not pressed or passed upon below' "—but fails to provide any reason why violation of that rule should be forgiven more easily than violation of Rule 14.1(a). *Ante,* at 34, n. 7. If anything, one might think that the Court should be more reluctant to waive the rule requiring presentation of the issue below, because it ensures the adequate development of the record and protects the Court from deciding questions that could have been resolved by the lower courts. In addition, although the majority claims that the rule was satisfied "because the issue there *had been passed upon* by the lower court," it fails to note that part of the reason the rule was deemed to be satisfied was that the party had raised and the Court of Appeals had de-

Our opinion in *Yee* explains why Rule 14.1(a) ordinarily bars consideration of unpresented questions. First, the rule provides notice and prevents surprise, thus ensuring full briefing; second, the rule allows the Court to select only cases which present important questions and to focus its attention on those questions. *Yee*, 503 U. S., at 535–536. Neither reason applies here. There was no surprise, because the intervention issue was raised in the petition for certiorari and in petitioner's opening brief, and respondent argued the propriety of denying intervention at every opportunity. Nor did failure to use the word "intervention" in the "Question Presented" section of the petition for certiorari interfere with the efficient selection of cases for plenary review, since the Court was fully aware that the issue needed to be resolved in order to reach the vacation issue. It is not surprising that *Yee*'s explanation of Rule 14.1(a) does not fit the circumstances of this case, because Rule 14.1(a) was never intended to provide the basis for dismissal, and, before today, was never used for that purpose.[9]

The Court today suggests an additional argument for strict enforcement of Rule 14.1(a), that "there would also be a natural tendency—to be consciously resisted, of course—to reverse the holding of the Court of Appeals on the intervention question in order that we could address the merits of the question on which we actually granted certiorari." *Ante*, at 34. Reliance on such a flimsy argument underestimates the character and the quality of the Court's decisional processes. Moreover, this argument overlooks the fact that the Court

cided the issue in *another* case. 504 U. S., at 43–45. In this case, a comparable response to the prudential rule precluding review of the issue not expressly mentioned in the "question presented" would simply note that the intervention issue was discussed in *another* section of the certiorari petition. Most importantly, the majority misses the point of the passage quoted from *Williams*. The majority in that case noted that "even if" the prudential rule were violated, "it would be imprudent . . . to reverse course at this late stage." *Id.*, at 40.

[9] See n. 6, *supra*.

was aware of that temptation at the time certiorari was granted. Nothing has changed since then to suggest dismissal is now more appropriate.

On the merits, I am persuaded that the Federal Circuit's routine practice is as objectionable as the practice we recently condemned in *Cardinal Chemical Co.* v. *Morton International, Inc.*, 508 U. S. 83 (1993).[10] While it is appropriate to vacate a judgment when mootness deprives the appellant of an opportunity for review, *United States* v. *Munsingwear, Inc.*, 340 U. S. 36 (1950), that justification does not apply to mootness achieved by purchase. Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.

Respondent argues that a policy of routinely vacating judgments whenever both parties so request will encourage settlement. It will, of course, affect the *terms* of some settlements negotiated while cases are pending on appeal, but there is no evidence that the *number* of settlements will be appreciably increased by such a policy. Indeed, the experience in California demonstrates that the contrary may well be true.[11] Moreover, the facts of this case indicate that any

---

[10] In *Cardinal Chemical* we held the Federal Circuit should discontinue its practice of routinely vacating as moot declaratory judgments of patent validity upon affirmance of a finding that the patent had not been infringed.

[11] Barnett, Making Decisions Disappear: Depublication and Stipulated Reversal in the California Supreme Court, 26 Loyola (LA) L. Rev. 1033, 1073 (1993). In the years before the California Supreme Court endorsed routine vacation of judgments on settlement, there was a natural experiment in the California courts of appeals. While most courts routinely granted vacation, Division One of the Fourth Appellate District never did. Comparison of the rates of settlement in that court and the rest of the California appellate courts suggests that the denial of vacation did not discourage settlement. In fact, the rate of settlement in Division One of the Fourth Appellate District was twice as high as that in other appellate courts.

benefit in the form of saving work for the appellate court will probably be offset by the added burdens imposed on trial courts in later proceedings. On the other hand, it seems evident that a regular practice of denying these motions unless supported by a showing of special circumstances will create added pressure to settle in advance of trial. The public interest in preserving the work product of the judicial system should always at least be weighed in the balance before such a motion is granted. I would therefore reverse the judgment of the Court of Appeals.