[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11850
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cv-20414-RSR

MAHAVEER SINGH,

Plaintiff-Appellant,

versus

CARNIVAL CORPORATION,
a Panama Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 29, 2013)

Before MARTIN, KRAVITCH, and COX, Circuit Judges.

PER CURIAM:

At bottom, this appeal is about whether the district court erred by compelling arbitration of claims by Mahaveer Singh, a seaman, against his employer, Carnival Corporation. We hold that the district court did not err.

Singh, a citizen of India, worked for Carnival Corporation, a Panama corporation, as a crewmember aboard its Panamanian flagged cruise ship, the *Dream*. On May 30, 2012, while participating in a lifeboat drill, the wire rope used to hoist Singh's lifeboat to the cruise ship suddenly parted, plunging Singh and several other crewmembers sixty-five feet to the sea below. Singh's fall inflicted serious injuries.

Singh's employment contract calls for the mandatory arbitration of any claims Singh might have arising out of his employment with Carnival and selects the Philippines as the arbitration forum. It chooses Panamanian law to govern the contract. Over the course of four and a half years working for Carnival, Singh signed six employment agreements containing the same, or a similar, arbitration clause.

Nevertheless, Singh contends that he did not know he was signing a contract containing an arbitration clause. It appears that Carnival presented the employment contract to Singh and his fellow seamen on a "take it or leave it basis." Carnival provided the contract to Singh as he was boarding the ship to report for work, and Singh hurriedly signed it in order to avoid being late to his

2

duty station.  Additionally, Singh contends that even if he had been aware of the arbitration clause, he would not have understood it, because his employment contract was in English.  His language is Hindi.

Singh filed suit in a Florida state court for injuries he sustained alleging four claims: (1) Jones Act negligence;[1] (2) failure to provide maintenance and cure;[2] (3) unseaworthiness; and (4) declaratory relief seeking a determination that his claims are not subject to arbitration.  Pursuant to 9 U.S.C. § 205, Carnival promptly removed Singh's action to the United States District Court for the Southern District of Florida[3].  The district court granted Carnival's motion to compel arbitration and denied Singh's motion to remand the case to state court.[4]  Singh appeals the district court's decision.

Singh "acknowledges that several issues presented in [his] brief have been decided adversely to him by panels of this Court . . . [but] nonetheless makes the

---

[1] The Jones Act confers on seamen the statutory right to sue their employers in an American court for the negligence of fellow crew members. 46 U.S.C. § 30104.

[2] "Maintenance and cure" is an ancient common-law maritime remedy for seamen who are injured while in the service of a vessel.  Basically, it is designed to place a seaman in the same position as if he had not been injured.  *See Flores v. Carnival Cruise Lines*, 47 F.3d 1120, 1127 (11th Cir. 1995).

[3] 9 U.S.C. § 205 provides: "Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards], the defendant or defendants may, at any time before the trial thereof, remove such action or proceeding to the district court …where the action or proceeding is pending." *See* 9 U.S.C. § 205.

[4] *See* 9 U.S.C. § 206 ("A court having jurisdiction under this chapter [9 USCS §§ 201 et seq.] may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.").

arguments in order to preserve them for further review." (Appellant's Reply Br. at 21-22).  While Singh presents six separate issues in his brief, the underlying issue in this case is whether the district court erred by compelling arbitration.  The six issues that Singh presents, as outlined in his statement of the issues in his brief, are as follows: (1) whether the arbitration agreement is valid under Panamanian law; (2) whether unconscionability based on gross disparity of bargaining power and attendant circumstances is a standard breach of contract defense that can be applied neutrally on an international scale and is, therefore, a defense to a motion to compel arbitration under Article II of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards; (3) whether the district court properly compelled arbitration pursuant to an arbitration agreement in a seaman's contract with a mandatory choice-of-law clause that required Singh, an Indian seaman, to arbitrate in the Philippines, under Panamanian law, and prospectively waive his Jones Act and Maintenance and Cure claims; (4) whether the arbitration and foreign choice of law clauses which eliminate Carnival's Jones Act liability and Plaintiff's right to choose the forum violate the Jones Act; (5) whether Singh's claims for maintenance and cure are not subject to arbitration; and (6) whether the case must be remanded to state court for lack of subject matter jurisdiction. (Appellant's Initial Br. at 1).

4

We review de novo a district court's order to compel arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (the "Convention") (codified as 9 U.S.C. §§ 202-208 (2012)). *See Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005).

When deciding a motion to compel arbitration, a court conducts a very limited inquiry. This limited inquiry generally consists of a two-step process: First, the court looks to see whether the Convention's jurisdictional perquisites are met. *See Bautista*, 396 F.3d at 1294. If these perquisites are met, it then looks to see whether any of the Convention's Article II affirmative defenses apply.[5] The Convention's four jurisdictional prerequisites are: (1) That there is an agreement in writing to arbitrate the dispute; (2) That the agreement provides for arbitration in the territory of a signatory of the convention; (3) That the agreement arises out of a legal relationship, whether contractual or not, that is considered commercial; and (4) That one party to the agreement is not a United States citizen, or that the commercial relationship at issue has some reasonable relation with a foreign state.

---

[5] The Convention mentions affirmative defenses in two places that are relevant to this case: Article II and Article V. A party seeking to resist arbitration may raise only Article II defenses when a court is deciding whether to compel arbitration. Article II defenses are limited to standard breach-of-contract defenses, which can be applied neutrally on an international scale. *Bautista*, 396 F.3d at 1302 (citing *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79 (1st Cir. 2000))(discussing Article II's "null and void" language). A party may raise Article V defenses only at the post-arbitration enforcement stage of proceedings. The Article V category of defenses is broader and includes unconscionability and violation of public policy as valid defenses.

5

*Id.* at 1294-95.  The party seeking to compel arbitration, Carnival, bears the burden of proving each of these jurisdictional prerequisites. *See generally Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257 (11th Cir. 2011).

The only jurisdictional prerequisite Singh disputes is the first one.  Singh asserts two affirmative defenses, which the district court properly characterized as unconscionability and violation of public policy.  The district court properly held that our decision in *Bautista* forecloses the argument that Article II includes an affirmative defense based upon unconscionability.  Similarly, the district court properly held that Singh's public policy defense (based upon the assertion that the employment agreement insulated compliance with the Jones Act and the general maritime law of the United States) "applies only at the arbitral award–enforcement stage". (Opinion at p. 10 quoting *Lindo*, 652 F.3d at 1280.)  Singh relies on *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009), and contends that *Lindo* is not binding precedent.

Singh argues that because the parties in *Lindo* settled after the panel issued its opinion, but before our mandate issued, the settlement mooted the controversy and deprived the Court of subject matter jurisdiction to decide the case.  Thus,

according to Singh, *Lindo* is not valid precedent, and we should have vacated our opinion in the case.[6]  We reject this argument.

Based on Singh's logic, anytime a party does not like the outcome in a case, that party could essentially "buy" the case's precedential value by settling the case. Our 1993 decision in *Key Enterprises of Delaware, Inc. v. Venice Hospital*, 9 F.3d 893 (11th Cir. 1993) (en banc), while not factually on point, appears to agree with Singh.  *Key Enters.*, 9 F.3d at 894-95.  There we said: "Because the case became moot after the panel published its decision but before the mandate issued, we dismiss the appeal, vacate the district court's judgment, and remand to the district court with instructions to dismiss the case." *Key*, 9 F.3d at 899.  Singh relies heavily on this case to press his point that the *Lindo* panel should have vacated its decision and that its failure to do so renders *Lindo* ineffectual as precedent. (Appellant's Br. at 44-45, 47-48).

In 1994, however, the Supreme Court decided *U.S. Bancorps Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386 (1994), which modified its precedent in *United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104 (1950). We relied on *Munsingwear* in formulating our decision in *Key.*

The Supreme Court acknowledged that it had established a broad rule regarding vacatur in *Munsingwear*, which required dismissal and vacatur if a case

---

[6] This means that our decision in *Thomas*, which is more favorable to Singh's positions, would purportedly control the analysis in this instance.

was mooted at any point in the appellate process.  *Bancorp*, 513 U.S. at 390.  It recognized that *Munsingwear* made no distinction between categories of mooted cases and that its rule even applied to cases mooted by reason of settlement.  *Id.* (citing *Lake Coal Co. v. Roberts & Schaefer Co.*, 474 U.S. 120, 106 S.Ct. 553 (1985) (per curiam)).  The *Bancorp* Court narrowed this rule and specifically addressed whether courts must vacate an opinion where subsequent mootness resulted from settlement.  *Bancorp*, 513 U.S. at 23-24.  The Court held that the opinion need not be vacated.  It explained that "[t]his is not to say that vacatur can never be granted when mootness is produced [by reason of settlement] . . . . [T]he determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course." *Id.* at 29.

*Lindo* was mooted by settlement of the parties after the opinion issued, so the determination became an equitable one where the panel was free to not vacate its opinion.  The panel exercised this discretion when it denied the parties' motion to dismiss with prejudice due to their settlement.  The *Lindo* panel's decision to not vacate its opinion appears especially correct in light of the Supreme Court's pronouncement that "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole.  They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur."  *Bancorp*, 513 U.S. at 26-27 (quoting *Izumi Seimitsu Kogyo*

8

*Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40, 114 S.Ct. 425, 428 (1993) (Stevens, J., dissenting)).  Since *Lindo* was correcting and clarifying the law and the precedential value of our earlier decisions in *Bautista* and *Thomas*, it was certainly valuable to the legal community as a whole, and its vacatur would not have served the public interest.

And 11th Cir. R. 36-3, IOP 2 supports our result.  It reads as follows:

> Effect of Mandate on Precedential Value of Opinion.  Under the law of this circuit, published opinions are binding precedent.  The issuance or non-issuance of the mandate does not affect this result.  See Martin v. Singletary, 965 F.2d 944, 945 n.1 (11th Cir. 1992) . . . .

*See* 11th Cir. R. 36-3, IOP 2.  Singh challenges the validity of 11th Cir. R. 36-3, IOP 2 when applied in this instance.  He states, "The fact that 11th Cir. Rule 36 grants precedential authority to a published opinion before the mandate issues does not change [the conclusion that the *Lindo* panel should have vacated its decision] . . . [and that] Carnival's reliance on 11th Cir. Rule 36 to provide precedential effect to *Lindo* must be rejected." (Appellant's Reply Br. at 12, 14).

Singh is correct that, at first blush, our decision in *Key* and Rule 36-3, IOP 2 are inconsistent.  But, this inconsistency disappears in this case when both are interpreted in light of the Supreme Court's decision in *Bancorp*.

The district court correctly analyzed and decided, based on our decisions in *Bautista* and *Lindo*, the other issues Singh presents.  We find no reversible error in the district court's analysis and its order granting Carnival's motion to compel

9

arbitration and denying Singh's motion to remand. (*See* opinion and order at Dkt. 22, pps. 1-14).  The district court properly compelled arbitration of Singh's claims, and we affirm its order.

AFFIRMED.