[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12781; 12-13728
_____

D.C. Docket No. 1:10-cv-24590-JLK

HARTFORD CASUALTY INSURANCE COMPANY,
a foreign corporation,

Plaintiff -
Counter Defendant,

HARTFORD ACCIDENT AND INDEMNITY COMPANY,
a foreign corporation, as equitable subrogee and real party in
interest on behalf of Miller & Solomon General Contractors, Inc.,

Plaintiff -
Counter Defendant -
Appellant,

versus

CRUM & FORSTER SPECIALTY INSURANCE COMPANY,
a foreign corporation, as equitable subrogee and real party in
interest on behalf of Miller & Solomon General Contractors, Inc.,

Defendant -
Counter Claimant -
Counter Defendant -
Appellant,

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
a foreign corporation,

                                        Defendant - Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(July 12, 2016)

Before TJOFLAT and WILSON, Circuit Judges, and COOGLER,[*] District Judge.

TJOFLAT, Circuit Judge:

This appeal concerns a settlement agreement made contingent on vacating

certain orders of the District Court.  After being moved to do so under Rule 60(b)

of the Federal Rules of Civil Procedure, the District Court declined to vacate those

orders.  We conclude that the District Court thereby abused its discretion because it

misapplied the Supreme Court's seminal decision in this area of the law, *U.S.*

*Bancorp Mortgage Company v. Bonner Mall Partnership*, 513 U.S. 18, 115 S. Ct.

386, 130 L. Ed. 2d 233 (1994), which sets out an equitable approach that generally

counsels against granting requests for vacatur made after the parties settle.  The

_____

[*] Honorable L. Scott Coogler, United States District Judge for the Northern District of
Alabama, sitting by designation.

*Bancorp* Court, however, provided an exception to this general rule for "exceptional circumstances." Here, there are such exceptional circumstances.

I.

Between June 15, 2012, and November 15, 2012, the District Court entered a series of orders granting summary judgment and assessing attorneys' fees and costs in favor of Crum & Forster Specialty Insurance Company and Westchester Surplus Lines Insurance Company (collectively, "Crum & Forster") in a suit about the scope of an insurance policy under Florida law brought by Hartford Accident and Indemnity Company ("Hartford"). Hartford appealed the District Court's grant of summary judgment to Crum & Forster on July 11, 2012. On August 31, 2012, we ordered the parties to take part in a mediation conference. That mediation failed to resolve Hartford's appeal.

After hearing oral argument, we ordered the parties to take part in a second mediation. This second mediation resulted in a conditional settlement agreement, which was executed by the parties on January 26, 2015. Crum & Forster and Hartford agreed to settle the case, but the agreement provided that the settlement "is expressly contingent upon the issuance of a valid, final, written order by a court of competent jurisdiction vacating the Summary Judgments and related Cost Orders and Crum & Forster Fee Judgment . . . in their entirety." If the District Court's orders were not vacated, the conditional settlement agreement provided

3

that "the Parties' controversy, as it existed before this Conditional Agreement was executed, shall remain live, and the remainder of this Conditional Agreement shall become null and void and otherwise unenforceable by any Party." We granted the parties' joint motion to stay Hartford's initial appeal on February 26, 2015, so the parties could file their motion to vacate those orders in the District Court pursuant to Rule 60(b). *See* Fed. R. Civ. P. 60(b)(6) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief.").

On May 27, 2015, the District Court, invoking the Supreme Court's *Bancorp* decision, concluded that there are not "exceptional circumstances" warranting vacatur of the contested orders. Specifically, the District Court rejected the grounds advanced by Crum & Forster and Hartford (1) that the conditional settlement agreement was reached only after we had ordered the parties to mediation, and (2) that the orders in question turned on a federal district court's interpretation of state law and are thus of limited precedential value. The Court reasoned that, even though we had ordered the parties to mediation, the resulting settlement evinced a "voluntary forfeiture of review," which counsels against vacatur, because the decision to settle was "entirely [the parties'] own prerogative." The Court further reasoned that whether or not its orders were of limited precedential value was beside the point; "vacatur should be granted only

4

where the public interest would affirmatively 'be served'" by doing so.  In reaching these conclusions, the District Court rejected the contrary reasoning of two of our sister circuits, whose understanding of the Supreme Court's *Bancorp* decision the District Court described as "flaw[ed]."  *See Major League Baseball Props., Inc. v. Pac. Trading Cards, Inc.*, 150 F.3d 149 (2d Cir. 1998); *Motta v. Dist. Dir. of INS*, 61 F.3d 117 (1st Cir. 1995) (per curiam).  This appeal timely followed.

## II.

Both Crum & Forster and Hartford jointly challenge the District Court's denial of their Rule 60(b) motion to vacate.  We review the District Court's denial of a Rule 60(b) motion for abuse of discretion.  *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 734 (11th Cir. 2014).  "'A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous.'"  *United States v. Toll*, 804 F.3d 1344, 1353–54 (11th Cir. 2015) (quoting *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1216–17 (11th Cir. 2009)).

III.

Although the District Court identified the correct legal standard for assessing whether vacatur is appropriate after a case settles—the Supreme Court's decision in *U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*, 513 U.S. 18, 115 S. Ct. 386, 130 L. Ed. 2d 233 (1994)—it applied that standard incorrectly. At issue in *Bancorp* was a settlement entered into by a debtor and creditor after the Supreme Court had granted certiorari to decide whether there was a "new value exception" to the absolute-priority rule of Chapter 11, a substantive issue of bankruptcy law. *See* 513 U.S. at 19–20, 115 S. Ct. at 389. Although the settlement mooted the question over which certiorari had originally been granted, the Court decided to hear the debtor's request that the Court vacate the Ninth Circuit's decision below, which the creditor opposed. *Id.*; *see also* 28 U.S.C. § 2106 ("The Supreme Court or any other court of appellate jurisdiction may . . . vacate . . . any judgment, decree, or order of a court lawfully brought before it for review . . . ."). The Court thus had to determine the effect of a settlement on the normal practice of vacating lower courts' decisions once an appeal has become moot. *See Bancorp*, 513 U.S. at 22–23, 115 S. Ct. at 390 (confirming this "'established practice'" and explaining "that vacatur 'clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented

6

through happenstance.'" (quoting *United States v. Musingwear, Inc.*, 340 U.S. 36, 39–40, 71 S. Ct. 104, 106–07, 95 L. Ed. 36 (1950))).

Concluding that the Ninth Circuit's decision should stand, the Court laid out a balancing approach in the "equitable tradition of vacatur." *Id.* at 24–25, 115 S. Ct. at 391–92. The "principal condition" that must be determined "is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.* at 24, 115 S. Ct. at 391. If so, that party should not be entitled to relief because "the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari," as "the case stands no differently than it would if jurisdiction were lacking because the losing party failed to appeal at all." *Id.* at 25–26, 115 S. Ct. at 392. Even if granting a request for vacatur would be fair to the party opposing it because "the parties are jointly responsible for settling" and thus "may in some sense" be thought to be "on even footing," the required balancing "must also take account of the public interest," as is true of any equitable remedy. *Id.* at 26, 115 S. Ct. at 392. By "disturb[ing] the orderly operation of the federal judicial system" and using vacatur "as a refined form of collateral attack on" unfavorable judgments, the public interest would be disserved because "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole." *Id.* at 27, 115 S. Ct. at 392 (quotation marks and citation omitted). The Court concluded its analysis by reiterating the equitable nature of its

7

adopted approach and declined to impose a bright-line rule against vacatur in all cases mooted by settlement because there may be "exceptional circumstances" that would warrant vacatur. *Id.* at 29, 115 S. Ct. at 393. The Court cautioned that "those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur." *Id.*

To date, two of our sister circuits have held that there are such "exceptional circumstances" justifying vacatur in published opinions.[1] In *Motta v. District Director of INS*, the First Circuit concluded that vacatur was warranted when the parties to an immigration suit agreed to enter into a settlement after a panel of that Court suggested they do so during oral argument.[2] The Immigration and Nationalization Service ("the INS") agreed to settle on the condition that the district court order under review, which the INS viewed as "dangerous and erroneous precedent," be vacated. *See Motta*, 61 F.3d at 118. Distinguishing *Bancorp*, the First Circuit observed that "[t]he INS did not by its own initiative relinquish its right to vacatur" as it had "at all times sought to pursue its appeal," with the INS's consideration of settling coming "only at the suggestion of th[e]

---

[1] Other circuits, including this one, have also vacated district courts' precedential rulings based on the presence of exceptional circumstances in unpublished opinions. *See Blue Cross and Blue Shield Ass'n v. Cox*, 403 F. App'x 417 (11th Cir. 2010); *In re Gen. Motors Corp.*, No. 94-2435, 1995 WL 940063 (4th Cir. Feb. 17, 1995).

[2] The underlying issue at stake in *Motta* involved the propriety of a district court order staying deportation and allowing the Board of Immigration Appeals to decide whether to reopen proceedings. *Motta*, 61 F.3d at 117–18.

8

Court." *Id.* As such, there would be "no appreciable harm to the orderly functioning of the federal judicial system" because the parties were not granted "undue control over judicial precedents." *Id.* Although the First Circuit recognized that vacating district court precedent "works a kind of harm," the Court reasoned that "such a species of harm" does not outweigh the settling parties' interests and the efficiency benefits of settlement. *Id.* Unlike "the usual appeal" when "vacatur is only one consideration among others in a settlement," as was the posture in *Bancorp*, the *Motta* Court reasoned that the INS "is *primarily* concerned with the precedential effect of the decision below" because the INS is "a repeat player before the courts." *Id.* Weighing the concrete and individualized harm that would occur to the parties if their settlement efforts went for naught against the diffuse and slight harm to the public interest in preserving precedent, the First Circuit concluded that "the equities plainly favor vacatur." *Id.*

The Second Circuit reached a similar conclusion in *Major League Baseball Properties, Inc. v. Pacific Trading Cards, Inc.*, which involved an appeal of a district court order denying a preliminary injunction in a trademark dispute.[3]

---

[3] Specifically at issue in *Major League Baseball* was the District Court's decision to deny the preliminary injunction requested by Major League Baseball Properties, Inc. in its trademark dispute with Pacific Trading Cards, Inc., which concerned the production of unauthorized trading cards with images depicting Major League Baseball players wearing allegedly trademark-protected uniforms. *See* 150 F.3d at 150.

9

Because an injunction pending appeal "would be financially ruinous" to the defendant-appellee and because it would take several months to make a determination "even on an expedited basis," the Court ordered the parties to mediate their dispute with the help of staff counsel. *Major League Baseball*, 150 F.3d at 150–51. The parties returned with a settlement agreement contingent on the district court order being vacated and jointly requested that the Court grant vacatur. *Id.* at 151. Relying on the First Circuit's reading of *Bancorp*'s "exceptional circumstances" language, the Second Circuit reasoned that vacating the district court order was appropriate because doing so "was a necessary condition of settlement." *Id.* at 152. Leaving adverse precedent on the books could subject the markholder to a defense of acquiescence "in future litigation with alleged infringers." *See id.* Because the settlement benefitted both parties and "[t]he only damage to the public interest . . . would be that the validity of [the disputed trademarks] would be left to future litigation," the Court concluded that the balance of the equities favored vacatur. *Id.*

We follow the approach taken by the First and Second Circuits, which embraces the equitable nature of the Supreme Court's *Bancorp* inquiry. Under this approach, courts determine the propriety of granting vacatur by weighing the benefits of settlement to the parties and to the judicial system (and thus to the public as well) against the harm to the public in the form of lost precedent. The

10

precise application of this approach will vary case by case. Here, two unusual features of the settlement agreement entered into by Crum & Forster and Hartford tip the scales decisively in favor of vacating the District Court's orders in dispute.

First, we observe that Crum & Forster and Hartford did not begin their negotiations leading to settlement unprompted. It was only after the second time we referred their dispute to mediation that Crum & Forster and Hartford agreed to settle. As that agreement is expressly conditioned on the District Court's orders being vacated, this is not the case of an appellant "voluntarily forfeit[ing] his legal remedy by the ordinary processes of appeal or certiorari." *Cf. Bancorp*, 513 U.S. at 25–26, 115 S. Ct. at 392. Second and relatedly, this is an instance where both parties to the settlement desire vacatur because settlement would otherwise be impossible. Taken together, these considerations weigh heavily in favor of vacating the District Court's orders. The parties' interests are best served through the voluntary disposition of this case, and further proceedings are curtailed, conserving judicial resources. On the other side of the balance is the public interest in preserving a district court ruling on questions of state contract law that has been appealed to this Court. The slight value of preserving that precedent to the public interest generally, however, is outweighed by the direct and substantial benefit of settling this case to Crum & Forster and Hartford and to the judicial system (and thus to the public as well).

11

The District Court's contrary conclusion and reasoning below rest on two faulty premises that we expressly disavow.  First, the District Court concluded that, although we had ordered the parties to mediation, the resulting settlement nonetheless evinced a "voluntary forfeiture of [appellate] review" that was "entirely [the parties'] own prerogative."  As a result, Crum & Forster and Hartford should not be entitled to avail themselves of the equitable remedy of vacatur.  The District Court's rationale, however, proves too much.  Although any valid settlement will, of course, be "voluntary" and in some sense put an end to the dispute at hand, to conclude that a settlement *conditioned* on vacatur indicates a voluntary forfeiture of appellate review would eliminate the possibility that any settlement would ever warrant vacatur.  Adopting such a reading of "exceptional circumstances"—that is, categorically denying that any such "exceptional circumstances" exist—would be inconsistent with the Supreme Court's express language in *Bancorp* and the equitable nature of that decision.

Second, the District Court's approach to determining the nature of the public interest in vacatur is too narrow.  Relying on the following statement in *Bancorp*— "'Judicial precedents are presumptively correct and valuable to the legal community as a whole.  They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur,'" *Bancorp*, 513 U.S. at 26–27, 115 S. Ct. at 392 (quoting *Isumi Seimitsu*

12

*Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40, 114 S. Ct. 425, 428, 126 L. Ed. 2d 396 (1993) (Stevens, J., dissenting))—the District Court understood its discretion to grant vacatur to be limited to those circumstances in which doing so would affirmatively advance the public interest.  That is, the District Court read the quoted language from *Bancorp* to adopt a bright-line rule whereby vacatur could not be granted if there were only slight harm likely to befall the public interest, or even no harm at all, regardless of the magnitude of the countervailing benefits of settlement.  Apart from being plainly contrary to the equitable nature of the inquiry called for by *Bancorp*, the District Court's erroneous bright-line approach also fails to recognize that the public interest is not served only by the preservation of precedent.  Rather, the public interest is also served by settlements when previously committed judicial resources are made available to deal with other matters, advancing the efficiency of the federal courts.  When proper consideration is given to the interests of the parties, the judicial system, and the public taken together, vacatur may still prove an appropriate remedy even if the public's interest in the preservation of precedent is not affirmatively advanced when considered in isolation.

## IV.

Accordingly, the District Court's denial of Crum & Forster and Hartford's Rule 60(b) motion is **REVERSED**.  The District Court's orders of June 15, 2012;

13

June 21, 2012; October 30, 2012; and November 15, 2012, awarding Crum &

Forster summary judgment, costs, and attorneys' fees are hereby **VACATED**.

**REVERSED AND VACATED**

14